UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF AMERICAN GENERAL CONSTRUCTION, INC., and AMERICAN GENERAL CONSTRUCTION, INC. d/b/a AGC, INC., | Case No. 2:17-cv-01994-MMD-CWH |
| | ORDER |
| Plaintiffs, | |
| v. | |
| YACK CONSTRUCTION, INC., MERCHANTS BONDING COMPANY (MUTUAL), and PAE APPLIED TECHNOLOGIES, LLC, | |
| Defendants. | |

I.    SUMMARY

This is a contractual dispute between construction companies. Defendant Yack Construction, Inc. ("Yack") was hired to construct a hangar at Creech Air Force Base ("the Project") and subcontracted with Plaintiff American General Construction, Inc. ("AGC") to carry out a portion of the Project. AGC completed part of its work, but then its relationship with Yack deteriorated. Yack terminated AGC and hired one of AGC's former subcontractors to complete the work. Yack has refused to pay AGC, contending that AGC violated the contractual agreement that governed their relationship.

The following motions are pending before the Court: (1) Defendants Yack and Merchants Bonding Company (Mutual)'s ("Merchants") motion for summary judgment (ECF No. 47) and (2) Plaintiffs United States of America for the Use and Benefit of American General Construction, Inc. and AGC's motion for partial summary judgment (ECF No. 48). The Court has reviewed the parties' responses (ECF Nos. 51, 52) and replies (ECF Nos. 53, 54). The Court also held a hearing on the pending motions on September 24, 2019 ("the Hearing"). (ECF No. 59.) For the following reasons, the Court denies the parties' motions.

## II. BACKGROUND

The following facts are undisputed unless otherwise indicated.

The United States Air Force entered into a Range Support Services Agreement with PAE Applied Technologies, LLC ("PAE") in 2002. (ECF No. 52-4 at 2.) Under that agreement, PAE "provides a broad array of services to the Government at multiple locations on the Nevada Test and Training Range . . . [including] Creech Air Force Base." (*Id.*) One of the services PAE provided was overseeing the construction of the Project. (*Id.* at 3.)

PAE solicited proposals for the Project on October 6, 2016. (*Id.*) The request for proposals "expressly required bidders to obtain a Performance and Payment bond, as required under the Miller Act." (*Id.*) PAE entered into an agreement with Yack on January 30, 2017 that made Yack primarily responsible for the Project and required Yack to obtain the bond required under the Miller Act.[1] (*Id.*) Yack obtained a bond in the amount of $3,168,122 from Merchants on April 5, 2017. (*Id.*)

AGC submitted a proposal ("Proposal") on December 22, 2016 to Yack to carry out certain aspects of the Project. (*See* ECF No. 48-1 at 1.) The Proposal contains pricing for a regular schedule, accelerated schedule, payment terms, and exclusions. (*See id.* at 2-5.) Yack's agent signed the Proposal on January 6, 2017, agreeing to the regular schedule pricing and the following payment term: "Balance upon invoicing. Net 30 days." (*Id.* at 4.) The Proposal also bears the signature of AGC's agent. (*See id.* at 5.) The Proposal references additional forthcoming agreements between the parties, indicating that it "will need to be added . . . to any Ownership Contract Agreements." (*Id.* at 1.)

AGC contacted Yack on January 25, 2017 to ask whether a draft subcontract agreement was ready for review. (ECF No. 48-4 at 2.) Yack instructed AGC two days later to proceed with the work under the Proposal even though the subcontract agreement was ///

---

[1]Yack disputes that the bond is a Miller Act bond. (*See, e.g.*, ECF No. 47 at 2.)

1    not ready for review because Yack was "behind on [its] contracts." (*Id.* at 4.) AGC

2    commenced work on the Project sometime after that.[2] (ECF No. 52 at 4-5; *see also* ECF

3    No. 52-5 at 6-7 (email dated January 27, 2017 stating: "Rodney, we will have the door

4    loads need [sic] in order to continue with the foundation work later today.").)

5          Yack provided a draft subcontract agreement ("Subcontract Agreement") to AGC

6    on February 13, 2017. (ECF No. 52-11.) The Subcontract Agreement stated that upon

7    receipt of a copy for signature, if AGC "commences work on the site prior to signing," such

8    commencement would be "deemed to be acceptance" of the Subcontract Agreement. (*Id.*

9    at 4 (Section 2.1).) AGC returned the Subcontract Agreement to Yack with numerous

10    changes. (*See* ECF No. 52-12 (draft with notations); ECF No. 52-13 (email

11    correspondence regarding changes to the Subcontract Agreement); ECF No. 52-10 at 20-

12    21 (describing redline edits).) Yack did not agree to all changes, and AGC refused to sign.

13    (ECF No. 52-13 (email exchange in which Yack refused to change the Subcontract

14    Agreement); ECF No. 52-10 at 20-21 (deposition testimony of AGC's agent that "we never

15    came to terms").) In fact, AGC never signed the Subcontract agreement. (ECF No. 52-10

16    at 20-21; *see also* ECF No. 52-14 at 3 (email from AGC's agent stating that "[t]hese are

17    'Agreements' not 'take it or leave it' documents").)

18          AGC entered into a subcontract agreement with Central Concrete Company of Ohio

19    ("CCCO") on February 14, 2017 for CCCO to perform certain work on the Project. (*See*

20    ECF No. 52-18.) AGC contends that certain failures on the part of Yack delayed this work:

21        [T]he presence of a hole near the pad where AGC's Scope of Work was to
        be performed, Yack's failure to ensure a complete pad was poured prior to
22        AGC's arrival, Yack's failure to clear the site of dirt piles or to pour the
        concrete so that AGC and CCCO could proceed in a prompt manner, Yack's
23        refusal to approve necessary change orders, and Yack's failure to create a
        master schedule to the Project.
24

25    ///

26    ///

27        [2]At the Hearing, Yack's counsel made a distinction between work in preparation for
the construction and actual mobilization of manpower on site. She asserts that while AGC
28    performed design work in preparation, AGC did not commence work until February 14,
2017.

(ECF No. 52 at 7-8 (citing ECF No. 52-19; ECF No. 52-10 at 5, 19; ECF No. 52-20 at 3-6).)

Yack's representatives complained about CCCO's efforts in March 2017 and began to encourage AGC to terminate CCCO. (ECF No. 52 at 8; *see also, e.g.*, ECF No. 52-19 at 4 ("CCC did not show . . . . AGC needs to get control of their subcontractor['s actions."), 5 ("CCC is still a problem for AGC."), 6 ("CCC's performance is lacking and the crew doesn't seem motivated."); ECF No. 52-10 at 29-31.) AGC ultimately provided CCCO with a notice of termination on April 4, 2017. (ECF No. 52-25 at 2.) CCCO refused to return to the Project site on April 17, 2017, and Yack notified AGC that AGC would be terminated for failure to provide sufficient manpower at the Project site unless AGC provided sufficient manpower within 48 hours. (*See* ECF No. 52-28 at 4.) Yack terminated AGC on April 20, 2017. (ECF No. 52-33 at 2-3.)

AGC asserts the following claims against Yack in the First Amended Complaint ("FAC"): (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) quantum meruit; (4) unjust enrichment; (5) civil conspiracy; and (6) recovery from the Yack Bond. (ECF No. 14 at 13-19.) In the prayer for relief, AGC requests payment for the amount of the labor, materials, and services furnished to the Project as well as money damages, fees, and costs. (*Id.* at 20.)

## III.    LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where

4

reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted) (quoting William W. Schwarzer, *et al.*, The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441, 499 (Feb. 1992)). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

///

///

## IV.   DISCUSSION

AGC moves for partial summary judgment on its claim for breach of contract and breach of implied covenant of good faith and fair dealing against Yack, as well as for recovery against the Yack Bond as to Yack and Merchants. (ECF No. 48 at 1-2.) Yack moves for summary judgment on all of AGC's claims. (*See generally* ECF No. 47.) The Court denies both motions, though the Court dismisses AGC's claim for unjust enrichment after finding that a contract exists.

### A.   Breach of Contract

To succeed on its breach of contract claim, AGC must prove the following elements: (1) the formation of a valid contract; (2) performance or excuse of performance; (3) material breach; and (4) damages. *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987). The Court finds that a valid contract—the Proposal—governed the parties' relationship but that a genuine issue of material fact regarding breach precludes summary judgment.

The parties agree that the Proposal governs their relationship, at least in part. (ECF No. 53 at 4; *see also* ECF No. 59 (the Hearing).[3]) However, Yack argues that the Subcontract Agreement also binds the parties. (ECF No. 51 at 3.) Yack bases its argument on a provision of the Subcontract Agreement that allowed AGC to accept by commencing work on the Project. (*Id.*) The Court rejects Yack's argument because it would have been unreasonable for Yack to infer that AGC's work on the Project constituted assent.

"Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012) (quoting *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005)). "A meeting of the minds exists when the parties have agreed upon the contract's essential terms." *Id.* (citing *Roth v. Scott*, 921 P.2d 1262, 1265 (Nev. 1996)). "[T]he rendering of a performance does not constitute an acceptance if within a reasonable

_____

[3]At the Hearing, Yack's counsel insisted that that the governing contract consists of both the Proposal and the Subcontract Agreement.

6

1    time the offeree exercises reasonable diligence to notify the offeror of non-acceptance."

2    Restatement (Second) of Contracts § 53 (1981).

3        Although the Subcontract Agreement essentially stated that performance under the

4    contract constituted acceptance, the undisputed evidence shows that AGC expressly

5    rejected the Subcontract Agreement. AGC returned the Subcontract Agreement to Yack

6    with numerous changes. (*See* ECF No. 52-12; ECF No. 52-13; ECF No. 52-10 at 20-21.)

7    Yack did not agree to all changes, and AGC refused to sign. (ECF No. 52-13; ECF No.

8    52-10 at 20-21.) Thus, AGC exercised reasonable diligence to notify Yack of non-

9    acceptance, and there was no meeting of the minds. Moreover, the Subcontract

10   Agreement resembles an attempt to unilaterally impose additional conditions on the

11   parties' existing contractual relationship under the Proposal. For these reasons, the

12   Subcontract Agreement does not constitute a valid contract between the parties.[4]

13       AGC argues that it is entitled to summary judgment because Yack failed to make

14   any payment to AGC for either its first progress pay application or its final pay application.

15   (ECF No. 48 at 2-3.) Yack does not dispute that it failed to make payment or that it was

16   obligated to do so under the payment terms in the Proposal. (*See generally* ECF No. 51.)

17   But Yack argues that it was excused from the obligation to pay when AGC failed to provide

18   sufficient, qualified manpower to the jobsite. (ECF No. 53 at 4-5.) Yack's argument is

19   based on a provision of the Proposal that states: "REGULAR SCHEDULE (One Shift –

20   Monday through Friday – 8hrs/day)." (*Id.*) The parties agreed at the hearing that this

21   obligated AGC to provide sufficient manpower to the Project site. AGC argued that it

22   provided sufficient manpower; Yack argued otherwise. This is a genuine issue of material

23   fact suited to evaluation by a jury rather than the Court. Accordingly, the Court denies both

24   parties' summary judgment motions on this claim.

25   ///

26   ///

27       [4]Yack also argues that AGC agreed to a particular section (Section 2.5) of the
     Subcontract Agreement because AGC did not propose any changes to that section, but
28   Yack cites no legal authority to support the validity of such piecemeal acceptance. (*See*
     ECF No. 53 at 4.)

7

### B.    Breach of Implied Covenant

Yack argues that it is entitled to summary judgment on AGC's claim for breach of the implied covenant of good faith and fair dealing because there is no evidence that Yack and AGC had inequitable bargaining positions. (ECF No. 47 at 10-11.) AGC responds that its claim is grounded in contractual breaches, not tortious breaches, rendering Yack's argument moot. (ECF No. 52 at 21-22.) Yack did not respond to this argument in its reply. (*See* ECF No. 53.) Accordingly, the Court denies Yack's motion as to AGC's claim for breach of the implied covenant of good faith and fair dealing.

AGC argues that it is entitled to summary judgment on this claim "based on Yack's actions that impeded AGC from performing under the [Proposal] and because of Yack's pretextual, bad faith termination of the parties' [Proposal]." (ECF No. 48 at 12.) As discussed *supra* Section IV(A), genuine issues of material fact preclude summary judgment on the question of whether Yack's termination of AGC was pretextual and made in bad faith. These issues of material fact include whether AGC failed to provide sufficient manpower to the Project site. Accordingly, the Court denies AGC's motion as to its claim for breach of the implied covenant of good faith and fair dealing.

### C.    Unjust Enrichment

Given that the Court has found that a contract existed between the parties, the Court dismisses AGC's claim for unjust enrichment. *See Kunio Tsutsumi v. Advanced Power Techs., Inc.*, No. 2:12-cv-01784-MMD, 2013 WL 1953716, at *8 (D. Nev. May 10, 2013) (dismissing unjust enrichment claim because validity of contract was not in doubt). The "doctrine of unjust enrichment . . . applies to situations where there is no legal contract." *LeasePartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) (quoting 66 Am. Jur. 2d Restitution § 11 (1973)).

### D.    Civil Conspiracy

"An actionable civil conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Moonin v. Nev. ex rel. Dep't*

*of Pub. Safety Highway Patrol*, 960 F. Supp. 2d 1130, 1142-43 (D. Nev. 2013) (quoting *Consol. Generator–Nevada, Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998)).

Yack argues that it is entitled to summary judgment on this claim because AGC has not produced evidence of an agreement between Yack and CCCO to harm AGC. (ECF No. 53 at 6-7.) AGC relies on the following evidence to show the existence of an agreement: (1) Yack complained about CCCO and encouraged AGC to terminate CCCO; (2) Yack sent AGC a termination notice on the same day that AGC's termination of CCCO became effective even though the Project was on track for a timely completion; (3) Yack engaged in negotiations with CCCO prior to AGC's termination; and (4) Yack eventually hired CCCO to complete the Project. (ECF No. 52 at 24-25.) Yack does not dispute this evidence but essentially argues that more is necessary to raise a genuine issue of material fact. (*See* ECF No. 53 at 6-7.) The Court finds that a rational juror could infer the existence of an agreement to cut AGC out of the Project based on the evidence AGC identified. Accordingly, the Court denies summary judgment as to AGC's civil conspiracy claim.

### E. Intentional Interference with Contract Relations

Yack moves for summary judgment on this claim, but AGC did not assert this claim against Yack. (*See* ECF No. 52 at 24 n.3.) Accordingly, the Court denies Yack's motion as moot with respect to AGC's claim for intentional interference with contract relations.

### F. Recovery from the Yack Bond

The Court defers ruling on this claim because it may become moot if Yack prevails at trial.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motions before the Court.

///

9

It is therefore ordered that Defendants' motion for summary judgment (ECF No. 47) is denied. The motion is denied as moot with respect to AGC's claim for intentional interference with contract relations.

It is further ordered that Plaintiffs' motion for summary judgment (ECF No. 48) is denied.

It is further ordered that AGC's claim for unjust enrichment is dismissed.

DATED THIS 25th day of September 2019.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE